IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| McGOWAN WORKING PARTNERS, INC. | § | |
|---|---|---|
| | § | |
| Plaintiff, | § | |
| | § | NO. 3-10-CV-2472-BD |
| VS. | § | |
| | § | |
| ELAND ENERGY, INC., ET AL. | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

The issue presented in this case is whether an arbitration panel exceeded its authority in determining that McGowan Working Partners, Inc. ("McGowan") has a contractual duty to indemnify Eland Energy, Inc. and its subsidiary, Delhi Package I Limited Partners, Inc. ("Eland"), for indemnity obligations owed by Eland to third-parties, and that various settlements in a lawsuit brought against Eland and other defendants were fair, reasonable, and made in good faith. Concluding that the arbitration panel did not exceed its authority, the court denies McGowan's motion to vacate the arbitration award and grants Eland's cross-motion to confirm the award.

I.

In a series of transactions dating back to the early 1990s, Eland purchased interests in a Louisiana oil field, known as the Delhi Oil Field ("the Properties"), from Chevron U.S.A., Inc. ("Chevron"), Kerr-McGee Oil & Gas Onshore, LP ("Kerr-McGee"), and Total Petrochemicals USA, Inc. ("Total"). (*See* Plf. Mot. App. at 170, 1121-1212).[1] Each of the purchase agreements contained

---

[1] At the time of the transactions, Kerr-McGee was known as Sun Operating Limited Partnership and Total was known as Fina Oil and Chemical Company. (*See* Plf. Mot. App. at 1121-212, Exhs. 1-6).

a provision requiring Eland to indemnify the sellers against claims related to the Properties. (*Id.* at 170, 1140-41, 1165, 1203). In 1996, Eland sold its interest in the Properties to McGowan for $650,000. (*Id.* at 1314, ¶ 2(a)). As part of this transaction, McGowan agreed to assume certain obligations and indemnify Eland against certain losses. Of particular significance in this lawsuit are two provisions of the Purchase and Sale Agreement ("PSA") between the parties. Section 10 of the PSA provides, in pertinent part:

> (a) <u>Assumption of Obligations</u>.
>
> Assignment of the interests to [McGowan] shall constitute an express assumption by [McGowan] of, and [McGowan] expressly agrees to pay, perform, fulfill and discharge all claims, costs, expenses, liabilities and obligations accruing or relating to the owning, developing, exploring, operating and maintaining of the interests conveyed to [McGowan] at the closing, including without limitation, all violations of environmental law and all obligations arising under operating agreements, product sales agreements and the other agreements covering or relating to the interests, regardless of the negligence of [Eland].
>
> * * * *
>
> (c) <u>Indemnification</u>
>
> From and after the closing date, [McGowan] and [Eland] shall indemnify each other as follows:
>
> * * * *
>
> (ii) [McGowan] shall defend, indemnify and save and hold harmless [Eland] against all losses, damages, claims, demands, suits, costs, expenses, liabilities and sanctions of every kind and character, including without limitation reasonable attorneys' fees, court costs and costs of investigation, which arise from or in connection with [ ] any of the claims, costs, expenses, liabilities and obligations assumed by [McGowan] pursuant to section 10(a)[.]

(d) <u>Environmental Matters</u>.

* * * *

> If the Closing occurs, and without limiting [McGowan's] obligation hereunder, [McGowan] hereby assumes and shall be responsible for and shall indemnify, defend and hold harmless [Eland] from and against any and all Loss (as defined below) attributable to the Properties, injury to or death of persons or other living things, including but not limited to natural resource damages, Comprehensive Environmental Response, Compensation and Liability Act (CERCLA) response costs, environmental remediation and restoration costs arising out of or attributable to, in whole or in part, either directly or indirectly, the condition or operation of the Properties at any time before, at or after the Effective Date (including without limitation, any claims relating to any condition existing on, in or under, or resulting from operation of the Properties as of the Effective Date, but excluding any claims relating to conditions which [Eland] has undertaken to remediate pursuant to this Section).

* * * *

> (i) The indemnity provided for in each Section shall extend to any loss, cost, expense, fine, penalty, liability or damage ("Loss") incurred or suffered by the party seeking indemnification under the terms of this Agreement ("Indemnified Party"), including reasonable fees and expenses of attorneys, technical experts and expert witnesses reasonably incident to the matters of such indemnification.

(*Id.* at 1318-21, § 10) (caps omitted). The PSA also contains a provision that requires the parties to submit "[a]ll disputes arising out of or in connection with the Agreement, including indemnification, including the existence of a valid claim or amount to be paid by an Indemnifying Party[,]" to binding arbitration. (*Id.* at 1322, § 11). None of the indemnity agreements between Eland and its predecessors in interest were attached to or specifically identified in the PSA. (*Id.* at 1312-33).

Nearly a decade after the McGowan-Eland transaction, a group of plaintiffs sued Eland, Chevron, Kerr-McGee, and Total in Louisiana state court ("the Louisiana Litigation") for damages resulting from soil and groundwater contamination at the Properties. (*Id.* at 170-71, 195, 213, 216,

224). As required by the PSA, McGowan assumed Eland's defense in the Louisiana Litigation. (*Id.* at 181). However, McGowan refused to defend or indemnify Eland against cross-claims filed by Chevron, Kerr-McGee, and Total under their respective indemnity agreements. (*Id.* at 170-71, 789, 821, 834). Chevron eventually settled with the Louisiana plaintiffs for $1.25 million. (*Id.* at 852). Eland, in turn, paid Chevron $1 million to settle its indemnity cross-claim. (*Id.* at 741). Kerr-McGee and Total also reached settlements with the Louisiana plaintiffs. (*Id.* at 214, 221, 226). Their cross-claims against Eland remain pending. (*Id.* at 160).

Unable to convince McGowan that the indemnity provisions of the PSA include the "upstream" indemnity obligations owed by Eland under its contracts with third-parties, Eland demanded arbitration to resolve this dispute. (*Id.* at 19-21). Following a two-day hearing and extensive briefing of the issues, a three-member arbitration panel determined, *inter alia*, that:

- McGowan had an obligation to indemnify Eland against the cross-claims filed by Chevron, Kerr-McGee, and Total in the Louisiana Litigation;

- the $1.25 million settlement between Chevron and the Louisiana plaintiffs was fair, reasonable, and made in good faith;

- the $1 million settlement between Chevron and Eland was fair, reasonable, and made in good faith; and

- the arbitration panel acted within the scope of its authority in determining the reasonableness of the settlements.

(*Id.* at 15-16, ¶¶ 52-54). McGowan now moves to vacate the arbitration award on the ground that the arbitrators exceeded their authority by determining that McGowan agreed to indemnify Eland for "upstream" indemnity obligations owed to third-parties and by deciding the reasonableness of the Chevron settlements. In a related argument, McGowan contends that the arbitrators manifestly disregarded the law by deciding issues that are outside the scope of the arbitration agreement. Eland

opposes the motion and has filed a cross-motion to confirm the arbitration award. The issues have been fully briefed and argued by the parties, and this matter is ripe for determination.

II.

Judicial review of an arbitration award is "exceedingly deferential." *Brabham v. A.G. Edwards & Sons, Inc.*, 376 F.3d 377, 380 (5th Cir. 2004). The standard has been described as "among the narrowest known to the law." *Mantle v. Upper Deck Co.*, 956 F.Supp. 719, 726 (N.D. Tex. 1997), *quoting ARW Exploration Corp. v. Aguirre*, 45 F.3d 1455, 1462 (10th Cir. 1995). One ground for vacatur, asserted by McGowan in the instant case, is when the arbitrators exceed their powers in making the award. *See* 9 U.S.C. § 10(a)(4). "An arbitrator exceeds his powers when he acts outside the limits of the authority granted to him by the arbitration agreement, such as deciding issues that have not been submitted to him or acting contrary to express provisions of that agreement." *Prescott v. Northlake Christian Sch.*, 141 Fed.Appx. 263, 271-72, 2005 WL 1604000 at *5 (5th Cir. Jul. 8, 2005), *cert. denied*, 126 S.Ct. 829 (2005). As the Fifth Circuit has noted:

> It is well-settled that the arbitrator's jurisdiction is defined by both the contract containing the arbitration clause and the submission agreement. If the parties go beyond their promise to arbitrate and actually submit an issue to the arbitrator, we look both to the contract *and* the scope of the submissions to the arbitrator to determine the arbitrator's authority.

*Kergosien v. Ocean Energy, Inc.*, 390 F.3d 346, 354 (5th Cir. 2004) (emphasis in original), *overruled on other grounds, Citigroup Global Markets, Inc. v. Bacon*, 562 F.3d 349 (5th Cir. 2009), *citing Executone Info. Sys., Inc. v. Davis*, 26 F.3d 1314, 1323 (5th Cir. 1994). "Limitations on the arbitrators' scope of power must be clear and unambiguous or else they will be construed narrowly." *Action Indus., Inc. v. U.S. Fid. & Guar. Co.*, 358 F.3d 337, 343 (5th Cir. 2004), *citing Mastrobuono v. Shearson Lehman Hutton*, 514 U.S. 52, 62, 115 S.Ct. 1212, 1219, 131 L.Ed.2d 76 (1995). A court

must uphold an arbitration award "as long as the arbitrator's decision 'draws its essence' from the contract." *Executone Info. Sys.*, 26 F.3d at 1320. Stated differently, the decision must be affirmed if it "is rationally inferable from the letter or the purpose of the underlying agreement." *Id.* The court does not review the language or reasoning used by the arbitrator, only the result reached. *Anderman/Smith Operating Co. v. Tenn. Gas Pipeline Co.*, 918 F.2d 1215, 1219 n.3 (5th Cir. 1990), *cert. denied*, 111 S.Ct. 2799 (1991), *citing Local Union 59, Int'l Bhd. of Elec. Workers v. Green Corp.*, 725 F.2d 264, 268 (5th Cir.), *cert. denied*, 105 S.Ct. 124 (1984). In deciding whether an arbitrator exceeded his authority, the court must resolve all doubts in favor of upholding the award. *Id.* The party seeking to vacate an arbitration award has the burden of proof. *See Parker v. J C Penney Corp., Inc.*, No. 10-40280, 2011 WL 1935469 at *1 (5th Cir. May 20, 2011), *citing Matter of Arbitration Between Trans Chem. Ltd. and China Nat'l Mach. Imp. & Exp. Corp.*, 978 F.Supp. 266, 304-06 (S.D. Tex. 1997), *aff'd*, 161 F.3d 314 (5th Cir. 1998).

A.

McGowan contends that the arbitrators exceeded their authority by determining its liability for "upstream" indemnity obligations owed by Eland to Chevron, Kerr-McGee, and Total. Because those third-party indemnity contracts are not referenced in the PSA, McGowan argues that any issues arising under or related to the contracts are not subject to arbitration.

The arbitration provision of the PSA provides, in relevant part:

> All disputes arising out of or in connection with the [PSA], including indemnification, including the existence of a valid claim or amount to be paid by an Indemnifying Party is in dispute [*sic*], the parties agree to submit to binding arbitration in Dallas, Texas.

(Plf. Mot. App. at 1322, §11). Section 10(c) of the PSA requires McGowan to indemnify Eland against claims arising from obligations assumed by McGowan under section 10(a) of the agreement.

(*Id.* at 1319, § 10(c)(ii)). One of the obligations assumed by McGowan under section 10(a) is to "pay, perform, fulfill and discharge *all* claims . . . accruing or relating to the owning, developing, exploring, operating and maintaining of the interests conveyed to [McGowan] at the closing[.]" (*Id.* at 1318, § 10(a)) (emphasis added). The environmental contamination claims at issue in the Louisiana Litigation, which give rise to the indemnity obligations owed by Eland to the third-parties, unquestionably "relate to" operations at and interests in the Properties acquired by McGowan. Therefore, regardless of whether the arbitrators properly decided this issue, it is within the scope of the arbitration clause.

McGowan makes a variety of futile arguments why such is not the case. First, McGowan relies on other language in section 10(a) that supposedly limits the assumption of liabilities to "all violations of environmental law and all obligations arising under operating agreements, product sales agreements and *the other agreements* covering or relating to the interests, regardless of the negligence of [Eland]." (*Id.* at 1318, § 10(a)) (emphasis added). According to McGowan, "the other agreements" refers only to contracts specifically referenced in or attached to the PSA.[2] However, this argument all but ignores that the obligations listed in section 10(a) are "without limitation" to other unspecified obligations. The terms "without limitation," or "including without limitation," are most commonly read as a preface to examples of covered obligations, rather than an expansive list. *See St. Paul Mercury Ins. Co. v. Lexington Ins. Co.*, 78 F.3d 202, 206-07 (5th Cir. 1996). Even if the "without limitation" language was intended to suggest a comprehensive list of covered obligations, reference to "the other agreements," without more, does not necessarily indicate that the parties intended to extend their indemnity obligations *only* to contracts specifically referenced in the

---

[2] Among the agreements referenced in the PSA are various lease agreements, right-of-way agreements, and other contracts that cover or relate to interests in the Properties. (*See* Plf. Mot. App. at 1340-438). None of the third-party indemnity agreements are attached to or referenced in the PSA.

PSA. *Compare MEMC Electronic Materials, Inc. v. Albemarle Corp.*, 241 S.W.3d 67, 72-74 (Tex. App. -- Houston [1st Dist.] 2007, pet. denied) (buyer not required to indemnify seller for obligations arising under third-party indemnity contracts where asset purchase agreement specified that buyer "shall not assume any other Liabilities of Seller whatsoever" except "those Liabilities specifically assumed" in section 3.4(a) of the agreement, and third-party indemnity contracts were not mentioned in that section or accompanying schedule). It is certainly "rationally inferable" from the PSA that the third-party indemnity contracts between Eland and its predecessors fall within the scope of the broad indemnity language of section 10(a) which, in turn, makes this issue subject to arbitration.

Alternatively, section 10(d) of the PSA requires McGowan to indemnify Eland from loss "attributable to the Properties," including "natural resource damages [and] environmental remediation and restoration costs arising out of or attributable to, in whole or in part, either directly or indirectly, the condition or operation of the Properties at any time before, at or after the [date of sale]." (Plf. Mot. App. at 1320, § 10(d)(ii)). This language is broad enough for the court to at least "rationally infer" that section 10(d) covers "upstream" indemnity obligations owed by Eland to third-parties that are "attributable to the Properties." That there is a duty to indemnify regardless of whether the obligation arises "directly or indirectly" further indicates that the parties intended for Eland to be protected from claims beyond those based on its own conduct.

With respect to whether McGowan has an obligation to indemnify Eland against the cross-claims filed by Kerr-McGee and Total in the Louisiana Litigation, McGowan argues that the arbitrators exceeded their authority in deciding this issue because the amount of those cross-claims has yet to be determined. Notably, McGowan cites no authority for vacating an arbitration award on that ground. To the contrary, "a duty to defend may be ripe even if the underlying liability has not been established, and an indemnity dispute may be decided at the same time as the underlying

liability dispute." *Ace American Ins. Co. v. Huntsman Corp.*, 255 F.R.D. 179, 209 (S.D. Tex. 2008), citing *Lear Corp. v. Johnson Elec. Holdings, Ltd.*, 353 F.3d 580, 583 (7th Cir. 2003). In any event, the determination of whether this otherwise arbitrable dispute is ripe for adjudication should be made by the arbitrators, not the court. *Id.* at 210.

Based on the record in this case, the court is unable to conclude that the arbitrators exceeded their authority by determining that McGowan agreed to indemnify Eland for "upstream" indemnity obligations owed to Chevron, Kerr-McGee, and Total. The court declines to vacate the arbitration award on this ground.[3]

B.

McGowan further contends that the arbitrators exceeded their authority by deciding that the two settlements in the Louisiana Litigation -- the $1.25 million settlement between Chevron and the Louisiana plaintiffs, and the $1 million settlement between Eland and Chevron -- were fair, reasonable, and made in good faith. According to McGowan, this issue was not properly submitted to the arbitration panel because Eland never mentioned the reasonableness of the Chevron settlements in its submission papers. Instead, the online demand for arbitration made by Eland describes the dispute as "[r]ecognition and enforcement of defense and indemnity obligation of claims" raised in the Louisiana Litigation, without specifying a dollar amount. (*See* Plf. Mot. App. at 19).

Although this precise issue has not been determined by the Fifth Circuit, other courts have held that an arbitrator is accorded "great deference" in determining the scope of a submission. *See Certain Underwriters at Lloyd's London v. Ashland, Inc.*, 967 A.2d 166, 175-76 (D.C. Ct. App.

---

[3] To the extent McGowan argues that the third-party indemnity contracts do not satisfy the requirements of the express negligence doctrine, that argument is misplaced. The express negligence doctrine applies only where a party seeks indemnity for its own negligence. *See Ethyl Corp. v. Daniel Const. Co.*, 725 S.W.2d 705, 708 (Tex. 1987). Here, Eland seeks indemnity from McGowan for the negligence of Chevron, Kerr-McGee, and Total.

2009) (citing cases). That is because the AAA Commercial Arbitration Rules, which govern the dispute at issue, give arbitrators "the power to rule on [their] own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement." AAA COMMERCIAL ARBITRATION RULES ("AAA Rules"), Rule 7(a) (Jun. 1, 2009), *available at* http://www.adr.org/si.asp?id=6447. (*See also* Plf. Mot. App. at 1322, § 11). In addition, the pleading requirements in arbitration proceedings are generally relaxed. *Ashland*, 967 A.2d at 175-76 (citing authorities). The AAA Rules merely require that a demand for arbitration "contain a statement setting forth the nature of the dispute, the names and addresses of all other parties, the amount involved, if any, the remedy sought, and the hearing locale requested." *Id.* at 176, *quoting* AAA Rule 4(a)(i) (italics omitted).

Regardless of whether Eland asked the arbitrators to determine the reasonableness of the Chevron settlements in its initial demand, the record is replete with references to this issue throughout the arbitration proceeding. For example, the issue was specifically raised and exhaustively briefed by Eland in a pre-hearing submission. (*See* Plf. Mot. App. at 62-65, ¶¶ 55-61). At the arbitration hearing, Joseph LeBlanc, a Louisiana attorney specializing in environmental law and toxic tort litigation, testified that the $1.25 million settlement between Chevron and the Louisiana plaintiffs and the $1 million settlement between Eland and Chevron were reasonable. (*Id.* at 210-11, 215, 218). The reasonableness of both settlements was also identified by Eland in a post-hearing statement of issues. (*Id.* at 115, ¶¶ 3-4). In view of these facts and the standard of review, the court has little difficulty concluding that the reasonableness of the Chevron settlements was within the scope of issues submitted to the arbitration panel, and the arbitrators did not exceed their authority in deciding that issue. *See, e.g. Ashland*, 967 A.2d at 175-76 (arbitrator did not exceed authority by ruling on claim not asserted in initial filings where issue was raised and argued during

the arbitration proceeding); *but cf., Totem Marine Tug & Barge, Inc. v. North American Towing, Inc.*, 607 F.2d 649, 651 (5th Cir. 1979) (reversing arbitration award based on claim for which the prevailing party never sought damages and, in fact, conceded was not at issue in a brief submitted to the arbitration panel).[4]

C.

Finally, McGowan contends that the arbitrators manifestly disregarded the law by deciding that it was liable for Eland's "upstream" indemnity obligations. In *Hall Street Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 586, 128 S.Ct. 1396, 1404, 170 L.Ed.2d 254 (2008), the Supreme Court held that sections 10 and 11 of the FAA provide the exclusive grounds for vacating an arbitration award. The Fifth Circuit has consistently interpreted *Hall Street* to preclude setting aside an arbitration award on non-statutory grounds, such as "manifest disregard of the law." *See Bacon*, 562 F.3d at 355. Although the Supreme Court subsequently questioned whether "manifest disregard" survives as an independent basis for vacatur, *see Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, ___U.S.___, 130 S.Ct. 1758, 1768 n.3, 176 L.Ed.2d 605 (2010), the law in this circuit has not changed. Thus, McGowan's argument is foreclosed by Fifth Circuit precedent. *See Shaw Constrs., Inc. v. HPD, LLC*, 749 F.Supp.2d 474 (E.D. La. 2010) ("The Fifth Circuit has not responded to *Stolt-Nielsen* and therefore *Bacon's* refusal to recognize 'manifest disregard' as a separate ground for vacatur remains the rule in this Circuit.").[5]

---

[4] In its reply, McGowan argues for the first time that Eland was required by the AAA Rules to make a written claim regarding the reasonableness of the Chevron settlements. (*See* Plf. Reply Br. at 6). This argument fails for at least two reasons. First, the court may not consider new arguments made for the first time in a reply. *See Ghoman v. New Hampshire Ins. Co.*,159 F.Supp.2d 928, 936 n.9 (N.D. Tex. 2001) (citing cases). Second, Eland did make this claim in writing as part of its pre-hearing brief. (*See* Plf. Mot. App. at 62-65, ¶¶ 55-61).

[5] To the extent McGowan argues that the arbitrators manifestly disregarded the law by exceeding their powers, a statutory ground for vacatur recognized under section 10(a)(4) of the FAA, that argument is rejected for the reasons stated in this opinion.

## CONCLUSION

McGowan's motion to vacate the arbitration award [Doc. #1] is denied, and Eland's cross-motion to confirm the award [Doc. #9] is granted. All costs of court are taxed against McGowan. Counsel shall submit a proposed final judgment consistent with this opinion by **July 15, 2011**. The proposed judgment must be approved as to form by counsel for all parties, and shall be electronically submitted to Kaplan_Orders@txnd.uscourts.gov.

SO ORDERED.

DATED: July 6, 2011.

JEFF KAPLAN
UNITED STATES MAGISTRATE JUDGE